AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Southern District of Ohio

| | |
|---|---|
| United States of America<br>v.<br><br>RICARDO CARLOS DE ANDRADE<br>*Defendant(s)* | ) ) ) ) ) ) ) Case No. 3:18 mj 049 |

FILED
RICHARD W. NAGEL
CLERK OF COURT
2018 JAN 26 PM 4:47
U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WESTERN DIV.

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of _____ in the county of ____Montgomery____ in the
____Southern____ District of ____Ohio____, the defendant(s) violated:

*Code Section*                                   *Offense Description*

SEE ATTACHMENT A

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

_____
*Complainant's signature*

SA JENNIFER M. TRON, U.S. SECRET SERVICE
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1-26-18

_____
*Judge's signature*

City and state: DAYTON, OHIO            SHARON L. OVINGTON, U.S. MAGISTRATE JUDGE
*Printed name and title*

ATTACHMENT A

## COUNT 1
**[18 U.S.C. §§ 1029(a)(4) and (b)(2)]**

Beginning on an exact date unknown, but at least by on or about January 25, 2018, in the Southern District of Ohio and elsewhere, defendants **LEONARDO WOLF TARGINO, DIEGO M. DACOSTA, RICARDO CARLOS DE ANDRADE** and **SANDRO LOPES TRANCOSO DA SILVA**, did knowingly willfully and unlawfully conspire and agree together to commit the offense of illegally producing, possessing, controlling and having in their custody with intent to defraud, certain "device-making" equipment as defined by 18 U.S.C. § 1029(e)(6) capable of producing counterfeit access devices to include: counterfeit credit cards, a magnetic stripe card reader and a laptop computer, said production, control and custody and possession affecting interstate and foreign commerce, in that said device making equipment were physically transported from and through the States of Florida, New York and Illinois to the State of Ohio.

In violation of 18 U.S.C. §§ 1029(a)(4) and (b)(2).

## COUNT 2
**[18 U.S.C. §§ 1029(a)(1) and (b)(2)]**

Beginning on an exact date unknown, but at least by on or about January 25, 2018, in the Southern District of Ohio and elsewhere, defendants **LEONARDO WOLF TARGINO, DIEGO M. DACOSTA, RICARDO CARLOS DE ANDRADE** and **SANDRO LOPES TRANCOSO DA SILVA**, did knowingly willfully and unlawfully conspire and agree together to commit the offense of trafficking in one or more counterfeit access device, affecting interstate and foreign commerce in that said counterfeit access devices were physically transported from the States of Florida, New York and Illinois to the State of Ohio.

In violation of 18 U.S.C. §§ 1029(a)(1) and (b)(2).

## AFFIDAVIT

1. I, Jennifer M. Tron, being duly sworn, depose and state that I am a Special Agent with the United States Secret Service (USSS) and I have been so employed since March 1999. I have received training in conducting criminal investigations involving violations of Title 18 of the United States Code. I am currently assigned to the Dayton Resident Office. I am presently assigned to participate in investigations involving Access Device Fraud, as set forth in Title 18, United States Code, Section 1029.

2. This affidavit is made in support of an application seeking arrest warrants pursuant to federal criminal complaints against four (4) suspects identified as: **LEONARDO WOLF TARGINO** (hereinafter "**TARGINO**"), **DIEGO M DACOSTA** (hereinafter "**DACOSTA**"), **RICARDO CARLOS DE ANDRADE** (hereinafter "**ANDRADE**"), **SANDRO LOPES TRANCOSO DA SILVA** (hereinafter "**DA SILVA**"). This request stems from information provided to the U.S. Secret Service Dayton Resident Office by the Miami Valley Bulk Smuggling Task Force. This information consisted reliable and trustworthy intelligence/surveillance conducted by the task force on four (4) males and one (1) female operating in and around the Miller Lane Area in Butler Township on January 25, 2018.

3. The following information is personally known to your Affiant, or was reported to me by other law enforcement officers involved with, and otherwise knowledgeable of the facts of this case. This Affidavit does not contain all of the information derived from this investigation, only that which is deemed necessary to establish probable cause for the sought after warrants.

4. On the afternoon of January 25, 2018, I was contacted by Task Force Agent Rich Miller, of the Miami Valley Bulk Smuggling Task Force. He indicated he had been conducting operations near a Miller Lane area hotel. During the course of their operation, they observed suspicious activity, which lead them to conduct further surveillance of a Nissan Armada automobile containing three (3) individuals bearing Florida license plate # 166-YTH. This vehicle was specifically observed at a local Valero gas station on Miller Lane. At this gas station, one suspect (later identified as **TARGINO**) was observed leaving the subject vehicle and entering the gas station premises. Agent Miller followed and observed **TARGINO** use a credit card to pay for $50.00 in gas at pump #5. Agent Miller observed that **TARGINO** then had numerous credit cards in his possession. Agent Miller then observed **TARGINO** as he walked to an adjacent ATM and used a different credit card. Agent Miller advised that **TARGINO** looked through his cell phone after inserting the ATM card. **TARGINO** attempted the transaction multiple times with multiple cards. **TARGINO** then returned to the Nissan Armada. A second vehicle identified as a Chevy Tahoe containing two (2) individuals bearing Florida license plate # 952-LZD then approached the said parked Nissan Armada. All five (5) individuals then engaged in conversation outside their vehicles before returning to their respective vehicles. Agents then followed the two (2) suspect vehicles to a nearby Outback Steak House restaurant. The five (5) suspects were observed entering the restaurant. Agent Miller ran the two (2) vehicle license plates which both returned as

1

rental vehicles. He then contacted the subject rental vehicle company and obtained renter information which indicated that the Nissan Armada was rented by a Felipe Mello in Chicago, IL. Additional checks were conducted by Agent Miller's analyst on the name Felipe Mello. This check revealed an " alert" posted by the New York State Police indicating that Felipe Pinheiro Mello was sought for questioning in Genesee County, NY regarding possible fraudulent credit card purchases. As a result, Agent Miller thereafter contacted your Affiant for further assistance with this investigation.

5. Continuing on the same date, your Affiant and RAIC Kevin Dye, USSS Dayton Resident Office, responded to the said restaurant parking lot to assist with this investigation. The suspects were identified by Task Force agents as **TARGINO, DACOSTA, ANDRADE** and **SILVA**. Also identified as a passenger in the Nissan Armada was a female juvenile referenced as "**MBM**". All five (5) occupants of the two suspect vehicles were determined to be natives of Brazil. According to officials at Homeland Security Investigations, your Affiant was advised that **DACOSTA** was lawfully admitted to the U.S. as a permanent. resident in 2006. **TARGINO** indicated that he has over stayed his U.S. visa. According to officials at Homeland Security Investigations, your Affiant also learned that **SILVA** is believed to have legally entered the U.S. via a B1B2 visa in Ft. Lauderdale, FL on December 6, 2017; and **ANDRADE** entered the U.S. via a B1B2 visa in Miami Lauderdale, FL on December 5, 2017.

6. Continuing on the same date, after identifying all of the vehicle occupants, RAIC Kevin Dye verbally advised **DACOSTA** of his Miranda Rights. **DACOSTA** acknowledged that he understood the English and Portuguese language, and further understood his rights and advised that he was fully willing to cooperate with this investigation. He further advised that the other four (4) individuals spoke Portuguese and were not fluent in English. **DACOSTA** offered to translate information to **TARGINO, ANDRADE,** and **SILVA.**

7. **TARGINO** was identified as the driver of Nissan Armada. **ANDRADE** was identified as the driver of the Chevy Tahoe. Consent to Search Forms for both vehicles were presented to both **TARGINO** and **ANDRADE.** Both individuals consented to a search of their respective vehicles. **DACOSTA** interpreted these Consent to Search documents for both said individuals before they were executed in writing. Based on the fact both drivers were taken into custody, both vehicles were impounded by law enforcement authorities. A full inventory search of both vehicles was conducted prior to them being towed.

8. Continuing on the same date, all five (5) suspects were taken into custody and transported to the Butler Township Police Department in Dayton, OH. RAIC Kevin Dye, USSS Dayton Resident Office and your Affiant also responded to the said Butler Township Police Department.

9. Based on your Affiant's prior law enforcement training and experience, together with my review of the evidence seized from the suspect vehicles, your Affiant is aware that law enforcement officials recovered from the four (4) male suspects and the two (2) target

2

vehicles, among other things: three (3) Laptop computers, a magnetic stripe credit card encoder, and more than 400 counterfeit credit cards. All said items were inventoried as evidence. The first two said items are typically known to be used in conjunction with magnetic stripe encoder/reader to encode credit card account numbers on the magnetic stripe of counterfeit credit cards. Additionally, multiple items recovered from the Chevy Tahoe are indicative of "ATM skimming". This is a fraudulent process which allows thieves to obtain ATM card holders' personal identification information.

10. Continuing on the same date, RAIC Kevin Dye, Task Force Officer Jason Leslie, and your Affiant interviewed **DACOSTA**. RAIC Dye advised **DACOSTA** of his Miranda rights verbally and in writing. **DACOSTA** agreed to speak with investigators and provided the following information:

   **DACOSTA** stated that he was traveling with **TARGINO** and "**MBM**" from Fort Lauderdale, FL to conduct fraudulent credit card transactions using counterfeit credit cards. He stated that he met **TARGINO** and "**MBM**" at the end of December as they departed Fort Lauderdale, FL traveling to New York City for New Year's Eve. He further stated that they stayed at the Addington Hotel in New York City for a few days before traveling on to Buffalo, NY. **DACOSTA** stated that they stayed in Buffalo, NY for approximately six (6) days before traveling to Cleveland, OH where they met **ANDRADE** and **SILVA.** They stayed in Cleveland, OH for a few days before traveling to Chicago, IL where they stayed for four (4) days. **DACOSTA** stated that they stopped in the Dayton, OH area on 1/24/18 while traveling from Chicago, IL to Fort Lauderdale, FL. During their travels in all of the previously referenced cities and along their route, **DACOSTA** stated that they made purchases of electronics (iPhones, laptops, VR glasses…), electronic cigarettes, and clothing using the counterfeit credit cards. **DACOSTA** stated they would FedEx the illicitly purchased electronics to a specified address in Florida. The electronic items were then sold online.

   **DACOSTA** claimed that he has engaged in this fraud for approximately six (6) months since losing his job. He started working with **TARGINO** approximately (3) three months ago.

   The counterfeit credit cards are purchased for $80.00 each and are sent via FedEx to them. **DACOSTA** stated that they received additional cards at two (2) different FedEx locations (one in NY and one in Cleveland) during the trip. He additionally stated that the group makes counterfeit identifications.

   He stated that "**MBM**" is **TARGINO's** 17 year old girlfriend who traveled from Brazil to visit him. He further advised that she did not make any purchases and did not have any counterfeit cards provided for her.

11. Continuing on the same date, RAIC Kevin Dye interviewed **TARGINO** at the Butler Township (OH) Police Department. Prior to questioning, **TARGINO** was advised of his Miranda Rights by RAIC Dye, witnessed by Detective Jason Leslie. **TARGINO**

3

acknowledged his legal rights and agreed to answer questions. It should be noted that this interview was conducted via Vocalink with Portuguese Interpreter Gabrielle Zago (#251358) assisting. The following is a summary of **TARGINO'S** verbal statement to investigators.

> **TARGINO** confirmed the details of **DACOSTA's** statement including all portions of the trip and their criminal activity and added that he (**TARGINO**) paid $80.00 for each counterfeit credit card in advance from the unidentified suspects in Ft. Lauderdale. He further stated that he had been unlawfully negotiating counterfeit credit cards for six months, since his father had been arrested and deported to Brazil. **TARGINO** self-identified as an "overstay" on a visitor visa to the U.S. **TARGINO** stated that during the most recent trip he had taken to New York, Buffalo, Chicago and Cleveland, he had purchased 330 counterfeit credit cards, which were shipped to him during the trip in two shipments. **TARGINO** estimated he had made between $5,000.00 - $6,000.00 in cash, but did not identify personal purchases during trips as a benefit. Additionally, he stated he split all illicit cash earnings 50/50 with **DACOSTA** on this trip.

12. Continuing on the same date, while using Vocalink translation services, RAIC Kevin Dye and your Affiant attempted to interview **ANDRADE** and **SILVA**. RAIC Dye verbally advised **ANDRADE** and **SILVA** each of their Miranda rights. **ANDRADE** and **SILVA** both refused to acknowledge their Miranda rights and requested an attorney. The interview was discontinued at that time.

13. Based on the above information, your Affiant believes that probable cause exists to conclude that on or about January 25, 2018, in the Southern District of Ohio, and elsewhere, **LEONARDO WOLF TARGINO, DIEGO M DACOSTA, RICARDO CARLOS DE ANDRADE, SANDRO LOPES TRANCOSO DA SILVA**, conspired to knowingly, willfully, and unlawfully, produce, possess, control, and have in their custody with intent to defraud, certain device-making equipment and to further use and produce certain counterfeit access devices, and to further traffic in one or more counterfeit access devices, effecting interstate commerce, all in violation of Title 18 United States Code Section 1029(a)(1), (a)(4) and (b)(2).

Further your Affiant sayeth naught.

_____
SSA Jennifer M. Tron
United States Secret Service

Subscribed and sworn to before me this 26th day of January, 2018.

_____
SHARON L. OVINGTON
UNITED STATES MAGISTRATE JUDGE

4